## COUNTY OF BERKSHIRE, SEPTEMBER TERM 1839, AT LENOX.

───────

##### PRESENT :

Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE,
Hon. MARCUS MORTON,
Hon. CHARLES A. DEWEY,
} JUSTICES.

───────

## REUBEN HARRINGTON Junior *versus* THE COUNTY COMMISSIONERS OF BERKSHIRE.

The county commissioners laid out a highway and passed the usual orders for making it, and the owner of land over which it was laid out, obtained a verdict for his damages, which was accepted by the Court of Common Pleas and certified to the commissioners ; but before the proper time arrived for granting an order on the county treasury for the payment of such damages, measures were taken to discontinue the highway, and soon afterwards an order was passed to discontinue it, and the land above mentioned was never entered upon, and the commissioners refused to give the owner an order for the payment of his damages as found by the verdict. It was *held*, that he had a vested right to such damages, and that he was entitled to a writ of mandamus to the commissioners to compel them to draw an order for the payment thereof.

THIS was a petition presented to this Court in May, 1838, alleging that the county commissioners, on the 31st of May, 1836, laid out a county road over the petitioner's land in Adams ; that on the 19th of October, 1836, a jury assessed his damages at $439 , that on account of some informality the

Harrington *v.* County Commissioners of Berkshire.

verdict was rejected by the Common Pleas; that on the 28th of March, 1837, a new jury assessed his damages at $483; that the verdict was returned to the Court of Common Pleas at June term 1837, and accepted; that the verdict, with the adjudication thereon, was certified by the clerk of that court to the county commissioners at their next meeting held at Lenox, on the 5th of September, 1837, and that the commissioners then and there refused, and still refuse, to order the damages, so certified, to be paid out of the county treasury; wherefore the petitioner prayed that a writ of mandamus might be issued from this Court, requiring the commissioners to give the petitioner an order upon the county treasury for the damages so allowed to him.

The answer of the commissioners admitted these allegations, but set forth, that in April, 1837, pending the petition of N. Whitcomb, upon which Harrington's land was taken, if taken at all, E. Southwick and others presented their petition, representing that the road laid out over Harrington's land would be very expensive and hilly, and that the public would be well accommodated in another road, and requesting that the road laid out over Harrington's land might be discontinued; that Southwick's petition was continued from time to time until September, 1837, when the commissioners determined to view the premises and hear all parties interested therein, in October, 1837; that this was done, after due notice, and afterwards, in January, 1838, the commissioners ordered that the highway over Harrington's land be discontinued, no part of it having been worked, and the time by which it was ordered to be made (November 1st, 1837,) having elapsed; and that Harrington, not having been interrupted in the enjoyment of his land, and having sustained no damage, it was ordered that the damages awarded to him by the verdict should be withheld and not paid

*Sept. 19th, 1838.*

*D. N. Dewey, Robinson* and *Penniman,* for the petitioner, cited Revised Stat. *c.* 24, § 1, 36, 42.

*Barnard* and *Bishop,* for the respondents, cited *Van Rensselaer* v. *Sheriff of Albany,* 1 Cowen, 501.

*May term, 1839.*

SHAW C. J. drew up the opinion of the Court. The petition and answer, on which this question arises, present a

novel, and in many respects a peculiar and extraordinary case for the consideration of the Court. It appears that the county commissioners, in pursuance of the powers vested in them by law, having given the notices required, and conformed generally to the rules of law, adjudicated upon the common convenience and necessity of a public highway, and thereupon located and laid out the same, passing to some extent over the land of the petitioner. The usual orders for making and fitting the road for public use, were passed. The petitioner applied for a jury to assess his damages, and after one attempt, which proved unsuccessful on account of some informality, a verdict of the sheriff's jury assessing his damages, was duly returned to the Court of Common Pleas and accepted, and certified in due form of law to the county commissioners. Before the proper time had arrived, for granting an order on the treasury for the payment of the complainant's damages, and before his land had been entered upon, or his possession disturbed, measures were taken for the discontinuance of the highway, and subsequently an order or decree was passed, discontinuing it. Therefore the county commissioners declined issuing an order for the payment of the complainant's damages, on the ground, that as his land had not been entered upon, and after the order of discontinuance, never could be entered upon, he had sustained no real damages, and was not entitled to claim payment according to the verdict.

It is now contended for the respondents, that it would be highly unjust and inequitable, to require the public to pay the whole value of the land, for a naked right or privilege, which they have never used, and now never can use ; and that it is equally unjust for the complainant to demand a sum of money by way of damage, for a loss which he has not and cannot sustain.

If there were any middle course to be adopted, if any apportionment could be made, by which the complainant could be indemnified for the actual trouble and expense, to which he has been subjected, and the public exempted from further liability, it would be more in accordance with principles of equity. But there seems to be no legal principle, on which this can be done. It was suggested that he should claim damages for the

*Harrington*
*v.*
*County*
*Commis-*
*sioners of*
*Berkshire.*

discontinuance ; but the discontinuance, as it relieves his estate from a burdensome service, to which it was subject, by a perpetual easement, is a benefit and not a damage ; indeed the damage given on laying out the road, is a compensation for imposing this service upon the land. It is therefore a question of legal right to the sum fixed by the verdict, and the adjudication upon it, by the court having jurisdiction of the subject ; and it appears to be a necessary consequence, that the complainant is entitled to the whole amount, or to no part of it. If the adjudication discontinuing the road, vacated all the prior proceedings, including the verdict and judgment of the Court of Common Pleas accepting it, that judgment is in effect reversed and annulled, and then the complainant can make no claim under it ; otherwise it remains in full force, and he is entitled to the entire benefit of it.

Such being the question, the Court are of opinion, that the petitioner, on the return and acceptance of the verdict, acquired a vested right to his damages, and that the subsequent discontinuance of the highway did not divest or defeat that right. This conclusion seems to result from a few well settled principles. When a highway is laid over land, it does not divest the title of the owner ; the fee remains in him and descends to his heirs, subject only to a perpetual easement for the public, so long as it may be their pleasure to use it. That easement is a lien and nothing more. When that lien is taken off, by the discontinuance of the highway, which may at any time be effected by the authorized agents, charged with that department of the public service, it cannot be said that the property revests in the former owner ; it has always been in the same owner, but now the lien is removed, and the owner continues to hold it, thus discharged from the burden. But as the public have a right to hold a perpetual easement, and the strong probability and the practical result usually is, that the easement and the burden will be perpetual, and as the easement for the public is of such a nature, that practically it deprives the owner of all, or nearly all, beneficial use of the land, and leaves him a barren fee only, the damage to the owner is practically equivalent to the whole value of the land. Therefore it is, that in estimating the damages which the public shall pay for such a lien upon the

fand, the question practically resolves itself into this, what is the value of the land, which so large and perpetual a lien will almost wholly deprive the owner of the benefit of. And probably the contingency of the discontinuance of the road is practically of so inconsiderable a value, that estimated ever so accurately, it would deduct very little from the whole value of the land itself. Still, in a legal view, it is manifest, that the subject for which the public pays, and for which the owner of the soil receives compensation, is the right to have a perpetual easement upon the land, for a highway, until it shall be discontinued, by those who have competent authority to act for the public. But the fee of the land, subject to that lien, is not taken nor paid for ; and when the contingency happens, and the highway is discontinued and the lien removed, the enlarged enjoyment which the owner has thereby, is not derived from the public, but is incident to the ownership, which has always subsisted from the laying out of the highway. The Court are therefore of opinion, that when the highway is once completely established, and the damages of the land once settled by the modes pointed out by law, the right of the public to a perpetual easement in the land for a highway, till the public shall see fit for any cause to discontinue it, becomes complete, and the right of the owner to his damages or compensation for the lien or qualified right acquired by the public in his land, becomes vested.

The subsequent discontinuance of the highway is a new, distinct, substantive proceeding, which does not annul or disaffirm the former proceeding ; but on the contrary, assumes and acts upon it, as a valid proceeding. It was a contingency contemplated at the time of laying out the highway, inasmuch as the easement for the public was always held at the will of the public to be exercised by their competent agents. When it is exercised, it grants no new right to the owner of the land, but simply leaves him in the enjoyment of a right, which was always his, as incident to his ownership. After a highway had been used a considerable time, there would be no difficulty and no apparent injustice, in applying these principles. The difficulty arises from the fact, that the use, possession, and enjoyment of the property by the complainant, has never been dis-

Harrington
v.
County
Commis-
sioners of
Berkshire.

turbed.   But when it is considered that what the public ac-quire and pay for, is the right to a perpetual easement in the complainant's land, so long as they shall choose to use it, and the right to the compensation is complete, when the right of the public is complete ; and further, when it is considered, that the contingency of having the land free of the incum-brance, whenever the public see fit to discontinue and relin quish the use of it, whether it be a near or remote chance, of much or of little value, is one which he has never parted with, and never been paid for, it presents the question in a different aspect.   The enjoyment of this latter right therefore, cannot deprive him of his former vested right to damages ; the one being entirely consistent with the other.   The commissioners therefore were not justified in withholding from the complain-ant his order for the payment of his damages, conformably to the verdict, accepted by the Court of Common Pleas, and certified to the commissioners.

Some question was made, supposing the county commis-sioners were not justified, on the grounds stated, in withhold-ing payment from the complainant, whether his proper remedy was by a writ of mandamus.   It is true, that the extraordi-nary remedy by writ of mandamus, is to be resorted to with great caution, and ought not to be had where there is any other adequate and suitable remedy, in a regular course of judicial proceeding ; but as it is, to say the least, doubtful whether any action of debt or case would lie in favor of the complainant, as the act required to be done on the part of the county com-missioners is a ministerial, and not a judicial act, the Court are inclined to the opinion, that the complainant is entitled to a remedy by a writ of mandamus.

The Court do therefore order, that an alternative writ of mandamus issue, directed to the county commissioners, requir-ing them to draw an order on the county treasury for the pay-ment to the complainant, of the amount due to him pursuant to the verdict, or to make a return of the writ, setting forth the reasons and causes why they have not done it.